**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**KANSAS CITY**

| | | |
|---|---|---|
| NANOSCALE MATERIALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  06-2311 KHV |
| | ) | |
| APPLIED NANOSCIENCE INC., | ) | |
| EMERGENCY FILTRATION | ) | |
| PRODUCTS, INC., | ) | |
| THOMAS K. ALLEN, and | ) | |
| DOUGLAS K. BEPLATE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

NanoScale Materials, Inc. ("NanoScale") for its Complaint against Applied Nanoscience Inc. ("Applied Nanoscience"), Emergency Filtration Products, Inc. ("EFP"), Thomas K. Allen individually ("Allen"), and Douglas K. Beplate individually ("Beplate"), states as follows:

## PARTIES

1.     NanoScale is a corporation organized and existing under the laws of the State of Kansas with its principal place of business at 1310 Research Park Drive, Manhattan, Kansas 66502.

2.     Upon information and belief, Defendant Applied Nanoscience is a corporation organized under the laws of Nevada.

3.     Defendant Applied Nanoscience lists its business address as 1300 Veterans Memorial Highway, Suite 140, Hauppauge, New York 11788, but upon knowledge and belief, most of the day to day operations of Applied Nanoscience occur at the residence of Defendant Allen in Manhattan, Kansas.  Accordingly, upon knowledge and belief, Defendant Applied Nanoscience's principal place of business is in Manhattan, Kansas.

4.      Upon information and belief, Defendant EFP is a corporation organized under the laws of Nevada, with its principal place of business at 175 Cassia Way, Suite A115, Henderson, Nevada 89014.

5.      Upon information and belief, Defendant Allen is an individual resident of Kansas, whose address is 1704 Mulligan Place, Manhattan, Kansas 66502.

6.      Upon information and belief, Defendant Beplate is an individual resident of Nevada, residing at 2254 Candlestick Avenue, Henderson, Nevada 89052.

## JURISDICTION AND VENUE

7.      This is an action for patent infringement arising under the Patent Act, 35 U.S.C. §§ 271 and 281-285, false advertising under the Lanham Act, 15 U.S.C. § 1125(a), copyright infringement under the Copyright Act, 17 U.S.C. § 106, and unfair competition, breach of contract, breach of fiduciary duty, misappropriation of trade secrets and tortious interference under Kansas state law.

8.      This Court has jurisdiction over the federal law claims in this case pursuant to 28 U.S.C. §§ 1331 and 1338(a)-(b).

9.      This court exercises supplemental jurisdiction over the state law claims brought in this action, pursuant to 28 U.S.C. § 1367(a), in that the state law claims are so related to the claims over which this Court exercises original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

11.     This Court exercises personal jurisdiction over Defendants Allen and Applied Nanoscience by virtue of their residence within this State.

12.     This court exercises personal jurisdiction over Defendants EFP and Beplate under K.S.A. 60-308(b)(1), (2), and (5), by reason of those Defendants' transacting business within this State,

committing tortious acts within this State, and entering into contracts with residents of this State to be performed in whole or in part by one or more party in this State.

## FACTS COMMON TO ALL CLAIMS

13.     NanoScale incorporated on September 11, 1995.

14.     NanoScale is, among other things, a manufacturer and seller of nanoparticles for use in air filtration systems.

15.     Nanoparticles are small particles of matter whose size is measured in nanometers, which is one-billionth of a meter.

16.     NanoScale has developed proprietary high performance materials including nanocrystalline metal oxides, organometallic compounds, their derivatives including halogenated materials, and combinations thereof (the "NanoScale Nanomaterials"), for use, among other uses, with air filtration systems.

17.     The NanoScale Nanomaterials sorb and destroy microorganisms that come into contact with them.  In particular, halogens (such as chlorine) are effective in destroying micro-organisms when attached to metal oxides ("NanoScale Halogenated Nanomaterials").

18.     NanoScale has obtained patents for NanoScale Nanomaterials compositions, the method for creating the halogenated nanomaterials, and the method of destroying microorganisms through use of, among other things, the NanoScale Halogenated Nanomaterials.

19.     NanoScale creates the NanoScale Metal Oxides, such as nano magnesium oxide, by way of a process that is proprietary to NanoScale (the "Process").

20.     NanoScale guards the confidentiality of the Process.

21.     NanoScale hired Defendant Allen on January 10, 2002 as Vice President of Marketing and Sales.

22.     On January 10, 2002, as a condition of his employment with NanoScale, Defendant Allen

signed a confidentiality agreement, which is attached hereto as Exhibit A (the "Allen

Confidentiality Agreement").

23.     Defendant Allen learned the Process in the course of his employment with NanoScale.

24.     In addition, Defendant Allen signed an Assignment of Intellectual Property, attached

hereto as Exhibit B.

25.     Defendant EFP makes and sells air filtration masks, among other items.

26.     In 2002, NanoScale and Defendant EFP commenced discussions regarding the use of

NanoScale Halogenated Nanomaterials for use with EFP's masks.

27.     As Vice President of Marketing and Sales, Defendant Allen communicated with EFP, and

was integral in NanoScale's efforts to obtain EFP as a customer.

28.     Defendant Beplate was, and upon information and belief still is, the president of EFP.

29.     Defendant Beplate was the EFP representative with whom NanoScale communicated

during NanoScale's discussions with EFP in 2002 and 2003.

30.     During the course of its negotiations with NanoScale, EFP executed a confidentiality

agreement, attached hereto as Exhibit C (the "EFP Confidentiality Agreement").

31.     In September 2002, EFP announced that it had entered into an agreement with NanoScale

"to explore opportunities to utilize and expand technologies."  A copy of this press release is

attached hereto as Exhibit D.

32.     In October 2002, EFP announced that its "recently announced alliance" with NanoScale

"should assist" it in "offering products designed to combat bioterrorism."  No such "alliance"

existed.  A copy of this press release is attached hereto as Exhibit E.

- 4 -

33.     In November 2002, EFP purchased two hundred (200) grams of NanoScale Halogenated Nanomaterials for testing, in furtherance of the parties' discussions regarding incorporation of NanoScale Halogenated Nanomaterials into EFP masks.   The invoice evidencing this sale is attached hereto as Exhibit F.

34.     In a December 2, 2002 press release, EFP announced an agreement between NanoScale and EFP, when no such agreement had been made.   That press release stated: "EFP entered into an agreement with NanoScale Materials, a Manhattan, Kan.-based company in September 2002. Nanoscale [sic] manufactures and markets the proprietary NanoActive (TM) materials and technologies EFP will utilize in its Environmental Isolation Mask design.   The reactive nanoparticle materials will enhance the capture and isolation characteristics of 2H technology by eradicating biological contaminants that come in contact with the coated filters."  A copy of the December 2, 2002 press release is attached hereto as Exhibit G.

35.     The December 2, 2002 press release further stated that EFP's products, incorporating the NanoScale Nanomaterials, would be tested at Nelson Laboratories in Salt Lake City, and that the testing was expected to be complete by December 12, 2002.

36.     In a December 9, 2002 press release, EFP stated that Nelson Laboratories in Salt Lake City was testing EFP's masks, which incorporated the NanoScale Nanomaterials.   That press release reiterated the statement that EFP had entered into an agreement with NanoScale.

37.     On December 12, 2002 EFP issued a press release describing the Nelson Laboratories tests as follows: "The test procedure consisted of challenging treated and untreated test materials with Gram-positive organisms, and then determining the percent reduction of the test organisms after specified exposure periods.   The sample treated with nanotechnology metal oxides were able to block contamination of the B.cereus and B. atrophaeus organisms used in the Nelson

Laboratories protocols." This press release further stated that the Nelson Laboratories test results were "significantly favorable." A copy of that press release is attached hereto as Exhibit H.

38.     The Nelson Laboratories test results showed a 21.68% reduction of bacterial growth.

39.     EFP represented to NanoScale and the public in December of 2002 that it had tested the NanoScale Halogenated Nanoparticles in December 2002 and they effectively killed test bacteria. A copy of this press release is attached hereto as Exhibit I.

40.     In a meeting with Defendant Allen on or about January 20, 2003, EFP represented that it would purchase between three and thirty million dollars worth of NanoScale Halogenated Nanomaterials for use in its masks.

41.     On January 27, 2003, NanoScale's attorneys sent a letter to EFP demanding that EFP cease representing that it had entered into an agreement with NanoScale, because there was no such agreement.

42.     On February 11, 2003, EFP issued another press release touting the results of testing of its nanotechnology-enhanced masks. This press release did not mention NanoScale.

43.     The February 11, 2003 press release stated that the Nelson Laboratories testing showed a 21.68% reduction of "bacterial colony forming units" on "filter surfaces."

44.     An article in the March 2003 issue of "Nanoparticle News" reiterated the test results described above, and stated that "the nanoparticles used in the mask were custom-engineered for EFP by Nanoscale [sic] Materials, Inc., a producer of high surface area metal oxide particles with unique crystal morphologies." EFP provided the information for this article.

45.     In a "Business Wire" article about EFP dated May 1, 2003, Defendant Beplate is quoted as saying that EFP's masks are treated with metal oxides.

46.    On June 5, 2003, EFP purchased 23 kilograms of NanoScale Nanomaterials from NanoScale.

47.    EFP did not purchase further products from NanoScale.

48.    In June of 2004, Defendant Allen's employment with NanoScale was terminated.

49.    In June 2004, Defendant Applied Nanoscience was founded by, among others, Defendant Allen and Defendant Beplate.

50.    Defendant Allen is the President of Applied Nanoscience.

51.    Defendant Beplate, who was president of Defendant EFP at the time of EFP's negotiations with NanoScale, is a director of Defendant Applied Nanoscience.

52.    Defendant Applied Nanoscience creates and sells nanomaterials for use in air filtration systems that incorporate nanoparticles ("ANI Nanoparticles").

53.    Defendant Applied Nanoscience competes with NanoScale.

54.    ANI Nanoparticles incorporate nano metal oxides and halogen atoms.

55.    NanoScale's patents, described below, grant NanoScale exclusive rights to use, make, offer to sell and develop nanoparticles that incorporate nano metal oxides.

56.    EFP and Applied Nanoscience advertise the ANI Nanoparticles as sorbing and destroying target particles, such as bacteria, fungi and toxins.

57.    On its website, Applied Nanoscience states that its nanomaterials "act as a destructive adsorbent to destroy microorganisms that come in contact with the filtration media."

58.    EFP and Applied Nanoscience advertise that testing has revealed that the ANI Nanoparticles achieve a 21.68% reduction in bacterial growth.  This is precisely the same result claimed for the Nelson Laboratories test of NanoScale Halogenated Nanomaterials.

212760059\V-4

59.     NanoScale's patents, described below, grant NanoScale exclusive rights to make, use, offer for sale, and import nanoparticles that sorb and destroy target particles such as bacteria, fungi and toxins.

60.     On March 13, 2003, Defendant Beplate filed a patent application entitled "Filtering Device Incorporating Nanoparticles," which was assigned patent application number 20040178135 (the "Beplate Patent Application").  A copy of the Beplate Patent Application is attached as Exhibit J.

61.     The Beplate Patent Application was rejected, in part, based on the prior art patents owned by NanoScale.

62.     NanoScale's attorneys have sent letters to attorneys for EFP concerning the unlicensed use of its nanoparticle technologies.

63.     In a letter from EFP's counsel dated March 7, 2006, EFP's counsel stated that EFP assured him that its NanoMask "sorbs no bacterium, fungus, virus, or toxin."

64.     EFP's advertisements state that nano magnesium oxide is the active ingredient in the NanoMask.  EFP's brochure containing that statement is attached hereto as Exhibit K.

65.     Applied Nanoscience's advertisements state that the ANI Nanoparticles "serve as a destructive adsorbent to eradicate harmful microorganisms."  Applied Nanoscience's corporate profile containing this statement is attached hereto as Exhibit L.

66.     Applied Nanoscience has sold and offered to sell the ANI Nanoparticles in the United States.

67.     Upon information and belief, Applied Nanoscience has either made or has induced a third party to make the ANI Nanoparticles, and Applied Nanoscience sells and has offered to sell these particles.

68.     EFP has made, offered to sell, and sold the NanoMask, which incorporates the ANI Nanoparticles, in the United States.

69.     In its advertisements and promotional materials, including on its website, ANI has reproduced textual and graphic material created by NanoScale, such as NanoScale's mission statement, brochures, and proprietary images.

## COUNT I - PATENT INFRINGEMENT (U.S. PATENT NO. 6,087,294)

70.     Plaintiff incorporates the allegations of paragraphs 1-69 above.

71.     U.S. Patent No. 6,087,294 issued July 11, 2000 ("the '294 patent") entitled "Dispersion and Stabilization of Reactive Atoms on the Surface of Metal Oxides," was duly and legally issued to Kansas State University Research Foundation as assignee of inventors Kenneth J. Klabunde and Naijian Sun.  A copy of the '294 patent is attached hereto as Exhibit M.

72.     NanoScale is the exclusive licensee of the '294 patent.

73.     Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have manufactured, used, offered for sale, and/or sold products that infringe the '294 patent, and/or have actively induced or contributed to the infringement of the '294 patent, including in this judicial district.

74.     Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have actual knowledge of the '294 patent, and Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of this patent has been and continues to be willful and deliberate.

75.     NanoScale has suffered irreparable harm by Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of the '294 patent and will continue to suffer irreparable harm in the future unless Applied Nanoscience, EFP, Allen and Beplate are enjoined from infringing the '294 patent.

76.     NanoScale has not consented to any acts by the Defendants which infringe the '294 patent.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against the Defendants, ordering as follows:

a)      The Court adjudge and decree that United States Patent No. 6,087,294 is valid and enforceable against Defendants;

b)      The Court adjudge and decree that Defendants have infringed United States Patent No. 6,087,294;

c)      Defendants be preliminarily and permanently enjoined from infringement of United States Patent No. 6,087,294 pursuant to 35 U.S.C. §283;

d)      The Court order an accounting for damages sufficient to compensate Plaintiff for Defendants' past infringement of United States Patent No. 6,087,294 , together with costs and prejudgment interest for the amount of damages determined;

e)      The Court increase such damages pursuant to 35 U.S.C. §284 up to three (3) times the amount found or assessed in view of the willful and deliberate character of Defendants' infringement;

f)      The Court order Defendants to impound any infringing articles in their possession, custody, or control;

g)      The Court find that this case is "exceptional" pursuant to 35 U.S.C. §285 and award Plaintiff its reasonable attorney fees; and

h)      The Court award Plaintiff such other relief as this Court deems just and proper.

## COUNT II - PATENT INFRINGEMENT (U.S. PATENT NO. 6,057,488)

77.     Plaintiff incorporates the allegations of paragraphs 1-76 above.

78.     U.S. Patent No. 6,057,488 issued May 2, 2000 ("the '488 patent") entitled "Nanoparticles for the Destructive Sorption of Biological and Chemical Contaminants," was duly and legally issued to Nantek, Inc. as assignee of inventors Olga Koper and Kenneth J. Klabunde.  A copy of the '488 Patent is attached hereto as Exhibit N.

79.     Nantek, Inc. is the former name of the plaintiff, NanoScale Materials, Inc.

80.     Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have manufactured, used, offered for sale, and/or sold products that infringe the '488 patent, and/or have actively induced or contributed to the infringement of the '488 patent, including in this judicial district

81.     Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have actual knowledge of the '488 patent, and Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of this patent has been and continues to be willful and deliberate.

82.     NanoScale has suffered irreparable harm by Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of the '488 patent and will continue to suffer irreparable harm in the future unless Applied Nanoscience, EFP, Allen and Beplate are enjoined from infringing the '488 patent.

83.     NanoScale has not consented to any acts by the Defendants which infringe the '488 patent.

        WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against the Defendants, ordering as follows:

212760059\V-4

a)   The Court adjudge and decree that United States Patent No. 6,057,488 is valid and enforceable against Defendants;

b)   The Court adjudge and decree that Defendants have infringed United States Patent No. 6,057,488;

c)   Defendants be preliminarily and permanently enjoined from infringement of United States Patent No. 6,057,488 pursuant to 35 U.S.C. §283;

d)   The Court order an accounting for damages sufficient to compensate Plaintiff for Defendants' past infringement of United States Patent No. 6,057,488, together with costs and prejudgment interest for the amount of damages determined;

e)   The Court increase such damages pursuant to 35 U.S.C. §284 up to three (3) times the amount found or assessed in view of the willful and deliberate character of Defendants' infringement;

f)   The Court order Defendants to impound any infringing articles in their possession, custody, or control;

g)   The Court find that this case is "exceptional" pursuant to 35 U.S.C. §285 and award Plaintiff its reasonable attorney fees; and

h)   The Court award Plaintiff such other relief as this Court deems just and proper.

## COUNT III - PATENT INFRINGEMENT (U.S. PATENT NO. 6,653,519)

84.   Plaintiff incorporates the allegations of paragraphs 1-83 above.

85.   U.S. Patent No. 6,653,519 issued November 25, 2003 entitled "Reactive Nanoparticles as Destructive Adsorbents for Biological and Chemical Contamination," was duly and legally

21276059\V-4

issued to Nantek, Inc. as assignee of inventors Olga Koper and Kenneth J. Klabunde. A copy of the '519 Patent is attached hereto as Exhibit O.

86. Applied Nanoscience, EFP, Allen and Beplate have manufactured, used, offered for sale, and/or sold products that infringe the '519 patent, and/or have actively induced or contributed to the infringement of the '519 patent, including in this judicial district.

87. Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have actual knowledge of the '519 patent, and Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of this patent has been and continues to be willful and deliberate.

88. NanoScale has suffered irreparable harm by Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of the '519 patent and will continue to suffer irreparable harm in the future unless Applied Nanoscience, EFP, Allen and Beplate are enjoined from infringing the '519 patent.

89. NanoScale has not consented to any acts by the Defendants which infringe the '519 patent.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against the Defendants, ordering as follows:

a) The Court adjudge and decree that United States Patent No. 6,653,519 is valid and enforceable against Defendants;

b) The Court adjudge and decree that Defendants have infringed United States Patent No. 6,653,519;

c) Defendants be preliminarily and permanently enjoined from infringement of United States Patent No. 6,653,519 pursuant to 35 U.S.C. §283;

d)    The Court order an accounting for damages sufficient to compensate Plaintiff for Defendants' past infringement of United States Patent No. 6,653,519, together with costs and prejudgment interest for the amount of damages determined;

e)    The Court increase such damages pursuant to 35 U.S.C. §284 up to three (3) times the amount found or assessed in view of the willful and deliberate character of Defendants' infringement;

f)    The Court order Defendants to impound any infringing articles in their possession, custody, or control;

g)    The Court find that this case is "exceptional" pursuant to 35 U.S.C. §285 and award Plaintiff its reasonable attorney fees; and

h)    The Court award Plaintiff such other relief as this Court deems just and proper.

## COUNT IV - PATENT INFRINGEMENT (U.S. PATENT NO. 6,417,423)

90.    Plaintiff incorporates the allegations of paragraphs 1-89 above.

91.    U.S. Patent No. 6,417,423 issued July 9, 2002 ("the '423 patent") entitled "Reactive Nanoparticles as Destructive Adsorbents for Biological and Chemical Contamination," was duly and legally issued to NanoScale as assignee of inventors Kenneth J. Klabunde, Olga Koper, and John S. Kablunde.  A copy of the '423 patent is attached hereto as Exhibit P.

92.    Applied Nanoscience has advertised on its website that the ANI Nanomaterials are effective against toxins.

93.    Applied Nanoscience, EFP, Allen and Beplate have manufactured, used, offered for sale, and/or sold products that infringe the '423 patent, and/or have actively induced or contributed to the infringement of the '423 patent, including in this judicial district.

94.     Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have actual knowledge of the '423 patent, and Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of this patent has been and continues to be willful and deliberate.

95.     NanoScale has suffered irreparable harm by Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of the '423 patent and will continue to suffer irreparable harm in the future unless Applied Nanoscience, EFP, Allen and Beplate are enjoined from infringing the '423 patent.

96.     NanoScale has not consented to any acts by the Defendants which infringe the '423 patent.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against the Defendants, ordering as follows:

a)   The Court adjudge and decree that United States Patent No. 6,417,423 is valid and enforceable against Defendants;

b)   The Court adjudge and decree that Defendants have infringed United States Patent No. 6,417,423;

c)   Defendants be preliminarily and permanently enjoined from infringement of United States Patent No. 6,417,423 pursuant to 35 U.S.C. §283;

d)   The Court order an accounting for damages sufficient to compensate Plaintiff for Defendants' past infringement of United States Patent No. 6,417,423 , together with costs and prejudgment interest for the amount of damages determined;

21276059\V-4

e)   The Court increase such damages pursuant to 35 U.S.C. §284 up to three (3) times the amount found or assessed in view of the willful and deliberate character of Defendants' infringement;

f)   The Court order Defendants to impound any infringing articles in their possession, custody, or control;

g)   The Court find that this case is "exceptional" pursuant to 35 U.S.C. §285 and award Plaintiff its reasonable attorney fees; and

h)   The Court award Plaintiff such other relief as this Court deems just and proper.

### COUNT V - PATENT INFRINGEMENT (U.S. PATENT NO. 6,093,236)

97.   Plaintiff incorporates the allegations of paragraphs 1-96 above.

98.   U.S. Patent No. 6,093,236 issued July 25, 2000 ("the '236 patent") entitled "Porous pellet adsorbents fabricated from nanocrystals," was duly and legally issued to Kansas State University Research Foundation as assignee of inventors Kenneth J. Klabunde, Olga Koper, and Abbas Khaleel. A copy of the '236 patent is attached hereto as Exhibit Q.

99.   NanoScale is the exclusive licensee of the '236 patent.

100.   Applied Nanoscience has advertised on its website that the ANI Nanomaterials can take either powder or pellet form.

101.   Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have manufactured, used, offered for sale, and/or sold products that infringe the '236 patent, and/or have actively induced or contributed to the infringement of the '236 patent, including in this judicial district.

102.    Upon information and belief, Applied Nanoscience, EFP, Allen and Beplate have actual knowledge of the '236 patent, and Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of this patent has been and continues to be willful and deliberate.

103.    NanoScale has suffered irreparable harm by Applied Nanoscience's, EFP's, Allen's and Beplate's infringement of the '236 patent and will continue to suffer irreparable harm in the future unless Applied Nanoscience, EFP, Allen and Beplate are enjoined from infringing the '236 patent.

104.    NanoScale has not consented to any acts by the Defendants which infringe the '236 patent.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against the Defendants, ordering as follows:

a)  The Court adjudge and decree that United States Patent No. 6,093,236 is valid and enforceable against Defendants;

b)  The Court adjudge and decree that Defendants have infringed United States Patent No. 6,093,236;

c)  Defendants be preliminarily and permanently enjoined from infringement of United States Patent No. 6,093,236 pursuant to 35 U.S.C. §283;

d)  The Court order an accounting for damages sufficient to compensate Plaintiff for Defendants' past infringement of United States Patent No. 6,093,236, together with costs and prejudgment interest for the amount of damages determined;

21276059\V-4

e)   The Court increase such damages pursuant to 35 U.S.C. §284 up to three (3) times the amount found or assessed in view of the willful and deliberate character of Defendants' infringement;

f)   The Court order Defendants to impound any infringing articles in their possession, custody, or control;

g)   The Court find that this case is "exceptional" pursuant to 35 U.S.C. §285 and award Plaintiff its reasonable attorney fees; and

h)   The Court award Plaintiff such other relief as this Court deems just and proper.

## COUNT VI - LANHAM ACT FALSE ADVERTISING AGAINST DEFENDANTS APPLIED NANOSCIENCE AND EFP (15 U.S.C. § 1125(a))

105.   Plaintiff incorporates the allegations of paragraphs 1-104 above.

106.   Applied Nanoscience and EFP advertise that their products contain nano metal oxides and sorb and destroy microorganisms such as bacteria and fungi.

107.   EFP's counsel, however, stated that EFP assured him that EFP's products do not sorb microorganisms.

108.   If the ANI Nanoparticles, and the EFP NanoMask that incorporates the ANI Nanoparticles, do not sorb microorganisms, as stated by EFP through its counsel, then EFP's and Applied Nanoscience's statements that the ANI Nanoparticles do sorb microorganisms are literally false statements.

109.   In addition, EFP and ANI have advertised that the ANI Nanoparticles achieve a reduction in bacterial colony growth of 21.68%.

110.   If the ANI Nanoparticles, and the EFP NanoMask that incorporates the ANI Nanoparticles, do not contain metal oxides, or do not sorb microorganisms, as stated by EFP,

- 18 -

through its counsel, then EFP's and Applied Nanoscience's statements that the ANI Nanoparticles achieve a 21.68% reduction in bacterial colony growth are literally false.

111.    Upon information and belief, the claim of 21.68% reduction of bacterial growth is based on the Nelson Laboratories test which utilized NanoScale Nanomaterials.

112.    Defendants' statements concerning the Nelson Laboratories tests are false and misleading because Defendants do not use NanoScale Nanomaterials, and it appears from those statements that they are claiming efficacy from Plaintiff's materials.

113.    EFP and ANI have made other false or misleading representations about EFP's and ANI's products in advertisements.

114.    The false and misleading statements described above are material, in that they are likely to influence purchasing decisions.

115.    EFP has a history of making false and misleading statements about its products.  In April of 1999, the Federal Food and Drug Administration sent a "Warning Letter" to EFP, warning EFP that FDA regulatory action would be taken against EFP if EFP did not cease making statements about its products' ability to reduce certain bacterial and viral organisms.  A copy of that FDA Warning Letter is attached hereto as Exhibit R.

116.    NanoScale has been damaged by the Defendants' false and misleading statements, in that it has lost customers and has expended capital and manpower to correct consumers' misconceptions about the ANI Nanoparticles and EFP's products that were caused by the false statements described herein.

117.    Upon information and belief, the Defendants had knowledge of the falsity of the statements described herein when those false statements were made.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendants, ordering as follows:

a.    That Defendants forever refrain from making false statements about their own products or the products of NanoScale; and

b.    That Defendants be required to compensate NanoScale for the damages it has suffered as a result of the activities alleged herein and disgorge their profits; and

c.    That Defendants be ordered to pay NanoScale treble damages pursuant to 15 U.S.C. § 1117(a); and

d.    That Defendants pay NanoScale's costs and attorneys' fees incurred in prosecuting this action pursuant to 15 U.S.C. § 1117(a); and

e.    That Defendants be required to engage in corrective advertising; and

f.    For such other and further relief as this Court deems just and proper.

## COUNT VII - CONTRIBUTORY FALSE ADVERTISING AGAINST DEFENDANTS ALLEN AND BEPLATE

118.   Plaintiff incorporates the allegations of paragraphs 1-117 above.

119.   Upon information and belief, Defendants Allen and Beplate actively induced Applied Nanoscience and EFP to advertise that their products contain halogen coated metal oxides, and sorb microorganisms such as bacteria and fungi, knowing those statements are false.  Defendants Allen and Beplate have also actively induced the other false and misleading statements described herein.

120.   As officers and directors of Applied Nanoscience and EFP, Defendants Allen and Beplate enjoyed personal financial benefit from the false statements made by Applied Nanoscience and EFP.

21276059\V-4

121.     NanoScale has been damaged by the Defendants' false statements, in that it has lost customers and has expended capital and manpower to correct consumers' misconceptions about the ANI Nanoparticles that were caused by the false statements described herein.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendants, ordering as follows:

a.       That Defendants forever refrain from inducing Applied Nanoscience and EFP to make false statements about their own products or the products of NanoScale; and

b.       That Defendants be required to compensate NanoScale for the damages it has suffered as a result of the activities alleged herein and disgorge their profits; and

c.       That Defendants be ordered to pay NanoScale treble damages pursuant to 15 U.S.C. § 1117(a); and

d.       That Defendants pay NanoScale's costs and attorneys' fees incurred in prosecuting this action pursuant to 15 U.S.C. § 1117(a); and

e.       That Defendants be required to engage in corrective advertising; and

f.       For such other and further relief as this Court deems just and proper.

## COUNT VIII - COPYRIGHT INFRINGEMENT

122.     Plaintiff incorporates the allegations of paragraphs 1-121 above.

123.     NanoScale authored and is the owner of the copyrights in and to the two images attached hereto as Exhibit S (the "Images")

124.     NanoScale has applied to register claims to copyright in the Images.   Copies of the applications are attached hereto as Exhibit T.

- 21 -

125.    Each Image is a separate, unpublished work of visual art.

126.    Defendant Applied Nanoscience reproduced, published and distributed the Images, in particular, in a powerpoint presentation.

127.    NanoScale did not authorize or consent to Defendant Applied Nanoscience's reproduction, publication, distribution or any other use of the Images.

128.    Defendant Applied Nanoscience's actions constitute copyright infringement under 17 U.S.C. § 106.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendants, ordering as follows:

a.    That Defendants forever refrain from infringing the Images; and

b.    That Defendants be required to compensate NanoScale for the damages it has suffered as a result of the activities alleged herein and disgorge their profits; and

c.    That Defendants be ordered to impound or destroy any materials that incorporate the Images; and

d.    For such other and further relief as this Court deems just and proper.

## COUNT IX - MISAPPROPRIATION OF TRADE SECRETS

129.    Plaintiff incorporates the allegations of paragraphs 1-128 above.

130.    The Process is not generally known in the nanoparticle industry.

131.    The Process is the subject of reasonable efforts to maintain the secrecy of the process, including confidentiality agreements.

132.    The Process derives independent economic value from its secrecy.

133.    The Process is a trade secret of NanoScale.

- 22 -

212760059\V-4

134.    Information about EFP, including EFP's buying requirements, customer contact information, and terms of negotiation between EFP and NanoScale (collectively, "EFP Information"), is not generally known outside of NanoScale.

135.    The EFP Information is the subject of reasonable efforts to maintain its secrecy, including confidentiality agreements.

136.    The EFP Information derives independent economic value from its secrecy.

137.    The EFP Information is a trade secret of NanoScale.

138.    By disclosing the Process to third parties, namely Applied Nanoscience and EFP, in violation of the Allen Confidentiality Agreement, Defendant Allen has misappropriated NanoScale's trade secret.

139.    By using the EFP Information for their own benefit, Defendants Allen and Applied Nanoscience have misappropriated NanoScale's trade secret.

140.    By using the Process, knowing that the information related to the Process was obtained by Defendant Allen while he was under a duty to guard the confidentiality of the Process, Defendants Applied Nanoscience, EFP and Beplate have misappropriated NanoScale's trade secret.

141.    NanoScale has been harmed by the activities alleged herein.

        WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendants, ordering as follows:

        a.      That Defendants be required to compensate NanoScale for the damages it has incurred as a result of Defendants' misappropriation of NanoScale's trade secrets; and

        b.      That Defendants pay NanoScale's costs and attorneys' fees incurred in prosecuting this action; and

c.      That punitive damages be assessed against Defendants because of the willful and deliberate nature of their conduct; and

d.      For such other and further relief as this Court deems just and proper.

## COUNT X - BREACH OF CONTRACT AGAINST DEFENDANT ALLEN

142.    Plaintiff incorporates the allegations of paragraphs 1- 141 above.

143.    The Allen Confidentiality Agreement constitutes a valid, enforceable contract between Defendant Allen and NanoScale.

144.    By disclosing information related to the Process to third parties, in particular, to Applied Nanoscience and EFP, Defendant Allen has violated the Allen Confidentiality Agreement.

145.    In addition, by using confidential information about EFP for his own personal benefit, Defendant Allen violated the Allen Confidentiality Agreement.

146.    NanoScale performed all of its obligations under the Allen Confidentiality Agreement.

147.    As a result of Defendant Allen's breach of the Allen Confidentiality Agreement, NanoScale has been damaged.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendant Allen, ordering as follows:

a.      That Defendant Allen be enjoined from taking any action that would violate the Allen Confidentiality Agreement for the remainder of its term; and

b.      That Defendant Allen be required to compensate NanoScale for the damages it has incurred as a result of Defendant Allen's breach of the Allen Confidentiality Agreement; and

c.      That Defendant Allen pay NanoScale's costs and attorneys' fees incurred in prosecuting this action; and

d.      For such other and further relief as this Court deems just and proper.

21276059\V-4

## COUNT XI - BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT ALLEN

148.    Plaintiff incorporates the allegations of paragraphs 1-147 above.

149.    As Vice President of Marketing and Sales, Defendant Allen was an officer of NanoScale and has a continuing fiduciary obligation to NanoScale.

150.    Defendant Allen occupied a position of trust and confidence as an officer of NanoScale.

151.    By disclosing information related to the Process to third parties, in particular, to Applied Nanoscience and EFP, Defendant Allen has violated the Allen Confidentiality Agreement.

152.    In addition, by using confidential information about EFP for his own personal benefit, Defendant Allen violated the Allen Confidentiality Agreement.

153.    The activities alleged herein constitute a breach of Defendant Allen's fiduciary duty to NanoScale.

154.    Defendant Allen's actions were willful, deliberate, and designed to cause harm to NanoScale.

155.    NanoScale has been harmed by the activities of Defendant Allen alleged herein.

        WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendant Allen, ordering as follows:

        a.      That Defendant Allen be required to compensate NanoScale for the damages it has incurred as a result of Defendant Allen's breach of his fiduciary duties to NanoScale; and

        b.      That Defendant Allen pay NanoScale's costs and attorneys' fees incurred in prosecuting this action; and

        c.      That punitive damages be assessed against Defendant Allen because of the willful and deliberate nature of his conduct; and

        d.      For such other and further relief as this Court deems just and proper.

- 25 -

## COUNT XII - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AGAINST DEFENDANTS APPLIED NANOSCIENCE AND ALLEN

156.    Plaintiff incorporates the allegations of paragraphs 1-155 above.

157.    NanoScale had a valid business expectancy in selling products to EFP.

158.    Defendants Applied Nanoscience and Allen interfered with that business expectancy.

159.    Defendants Applied Nanoscience and Allen were not justified in interfering with NanoScale's business expectancy in its relationship with EFP.

160.    NanoScale has been injured as a result of the Defendants' activities as alleged herein.

161.    Defendants Applied Nanoscience's and Allen's actions were willful, deliberate, and designed to injure NanoScale.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendant EFP, ordering as follows:

a.    That Defendants Allen and Applied Nanoscience be required to compensate NanoScale for the damages it has incurred as a result of Defendants' tortious interference with business expectancy; and

b.    That Defendants pay NanoScale's costs and attorneys' fees incurred in prosecuting this action;

c.    That punitive damages be awarded against Defendants because of their willful conduct; and

d.    For such other and further relief as this Court deems just and proper.

## COUNT XIII - TORTIOUS INTERFERENCE WITH CONTRACT AGAINST DEFENDANTS EFP AND APPLIED NANOSCIENCE

162.    Plaintiff incorporates the allegations of paragraphs 1-161 above.

163.    The Allen Confidentiality Agreement is a valid, enforceable contract.

164.    Defendants Applied Nanoscience and EFP knew of the Allen Confidentiality Agreement.

- 26 -

165.    Upon knowledge and belief, Defendants Applied Nanoscience and EFP induced Allen to breach the Allen Confidentiality Agreement by disclosing information related to the Process to Applied Nanoscience and EFP.

166.    The Defendants' actions were not justified.

167.    NanoScale has been injured as a result of the Defendants' activities as alleged herein.

168.    Defendants Applied Nanoscience's and EFP's actions were willful, deliberate, and designed to injure NanoScale.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendants EFP and Applied Nanoscience, ordering as follows:

a.      That Defendants EFP and Applied Nanoscience be required to compensate NanoScale for the damages it has incurred as a result of Defendants' tortious interference with the Allen Confidentiality Agreement; and

b.      That Defendants pay NanoScale's costs and attorneys' fees incurred in prosecuting this action;

c.      That punitive damages be awarded against Defendants because of their willful conduct; and

d.      For such other and further relief as this Court deems just and proper.

## COUNT XIV - KANSAS UNFAIR COMPETITION

169.    Plaintiff incorporates the allegations of paragraphs 1-168 above.

170.    Defendants compete with NanoScale.

171.    Defendants have competed unfairly with NanoScale by doing one or more of following as stated in the foregoing Counts:

A. Making false representations to the public.

B. Using NanoScale's Process so as to deceive the public concerning its source.

- 27 -

C. Using the EFP Information for their own benefit.

D. Interfering with NanoScale's business relationships and/or contracts.

E. Utilizing NanoScale's Images so as to deceive the public concerning their source.

F. Infringing on NanoScale's patents so as to deceive the public concerning their source.

172.   Defendants' acts have caused damage to NanoScale.

173.   The activities alleged herein constitute unfair competition under Kansas law.

WHEREFORE, NanoScale respectfully prays that this Court enter its judgment against Defendants, ordering as follows:

a.      That Defendants forever refrain from making false statements about their own products or the products of NanoScale; and

b.      That Defendants be required to compensate NanoScale for the damages it has suffered as a result of the activities alleged herein and disgorge their profits; and

c.      That Defendants be ordered to pay NanoScale punitive damages; and

d.      That Defendants pay NanoScale's costs and attorneys' fees incurred in prosecuting this action; and

e.      That Defendants be required to engage in corrective advertising; and

f.      For such other and further relief as this Court deems just and proper.

- 28 -

Dated: July 27, 2006                    Respectfully submitted,


                                        SONNENSCHEIN NATH & ROSENTHAL LLP


                                        By:    /s/ Robert O. Lesley
                                               Robert O. Lesley          KS #11545
                                               Rebecca S. Stroder        KS #20648
                                               4520 Main Street, Suite 1100
                                               Kansas City, Missouri  64111
                                               Phone:  (816) 460-2400
                                               Fax:  (816) 531-7545
                                               rlesley@sonnenschein.com
                                               rstroder@sonnenschein.com

                                               Attorneys for Plaintiff NanoScale Materials, Inc.